**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:   SOUTHERN LEASING &                    CASE NO. 09-40070-LMK
         MANAGEMENT, LLC d/b/a                 Chapter 11
         SUPERIOR REDI-MIX

         Debtor.
_____/

### A MINING GROUP, LLC AND A TRUCK LINE, LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION

Pursuant to Federal Rule of Bankruptcy Procedure 3020(b)(1) and Section 1129 of the Bankruptcy Code, A Mining Group, LLC ("A Mining") and A Truck Line, LLC ("A Truck Line") object to Southern Leasing & Management, LLC's ("Debtor") Second Amended Plan of Reorganization (Dkt. No. 402) (the "Plan"), and state:

### INTRODUCTION

On February 5, 2009, Debtor filed its voluntary petition for relief under Chapter 11 of the United States Code.  (Dkt. No. 1).  On February 11, 2009, CDS Manufacturing, Inc. ("CDS") filed its own voluntary petition for bankruptcy protection under Chapter 11– case no. 09-40089-LMK (the "CDS Bankruptcy").

On May 7, 2009, A Mining and A Truck Line each filed Proofs of Claim listing unsecured claims based on final judgments obtained against Debtor in separate state court proceedings.  A Mining and A Trucking are Class IV general unsecured creditors under the Plan.

On February 2, 2010, the Court entered an Order Approving Disclosure Statement Scheduling Confirmation Hearing, and Fixing Time for Filing Acceptance or Rejection of

Plan (Dkt. No. 399).  On February 4, 2010, Debtor filed the Plan (Dkt. No. 402).  As shown below, the Plan is not feasible and should not be confirmed.

## ARGUMENT

To be feasible, a plan must offer a reasonable prospect of success and be workable.  11 USC § 1129(a)(11) (2009); In re Haas, 162 F.3d 1087, 1090 (11th Cir. 1998) ("The plan itself must offer a reasonable prospect of success and be workable."); In re Mulberry Phosphates, Inc., 149 B.R. 702, 708 (Bankr. M.D. Fla. 1993).  While success of the plan need not be guaranteed, a court should be able to glean from the totality of the circumstances a reasonable assurance of success.  In re JRV Industries, Inc., 344 B.R. 679, 683 (Bankr. M.D. 2006).  In determining if a plan is feasible, a court can consider factors such as the earning power of the business, its capital structure, and economic conditions.  Id.  In addition, a debtor's past performance adds clarity to a plan's feasibility.  Id.

The Plan proposes to pay Class IV general unsecured creditors a 100% dividend plus 3% interest amortized over 8 years (quarterly payments of $36,351.64) with a final balloon payment of $415,677.83.  Debtor proposes to fund the Plan solely from its continued operations.  See Second Amended Plan; Art. VI, ¶ 6.01.  However, Debtors continued operations, as reported, raises doubt concerning funding the Plan.  For example, Debtor's 6 most recent operating reports (August 2009-January 2010, Dkt. Nos. 322, 331, 369, 377, 392 and 414) show that Debtor is not operating at a net loss:

| **Month** | **Net Loss** |
|-----------|--------------|
| August 2009 | ($64,880.13) |
| September 2009 | ($76,579.71) |
| October 2009 | ($60,760.21) |
| November 2009 | ($51,040.41) |
| December 2009 | ($32,311.40) |
| January 2010 | ($25,697.35) |

Based on the monthly operating reports, serious questions arise whether Debtor can realistically satisfy its commitment to the Class IV creditors, especially where it will be taking on other additional obligations proposed in the Plan.

Previously Debtor proposed to pay Class IV general unsecured creditors only a 21.3% dividend.  See Plan of Reorganization (Dkt. 332).  This modification to 100% distribution appears to be in response to objections to the first plan based on Debtor's inability to satisfy the absolute priority rule.  While this modification looks positive, a review of Debtor's financial history shows such a dramatic increase in distribution to Class IV creditors may not be supportable.[1]

Additionally, Debtor's projected schedule of receipts and disbursements (the "Projected Schedule") attached to its First Amended Disclosure Statement (Dkt. No. 379) is similarly unrealistic in light of its financial history.  The Projected Schedule increases total receipts from $486,500 as of March 31, 2010 to $1,459,500 by June 30, 2010 – a increase which simply is not supported by Debtor's own data.  Debtor's highest receipts total in the last six months (December 2009) was $416,725.27 and Debtor's most recent

---

[1]Seemingly, Debtor does not rely upon recovery of the $822,000 owed to it by CDS.  However, the CDS Bankruptcy docket shows that a proposed disclosure statement and plan have not been filed.  Accordingly, there is no basis for Debtor to assert what percentage of its unsecured claim will be recovered from the CDS Bankruptcy.

monthly operating report (January 2010) show total receipts of only $263,587.07. It is difficult to understand what methodology, if any, Debtor used to project a nearly 3 fold increase.

## CONCLUSION

While A Mining and A Truck Line welcome the prospect of a 100% dividend, Debtor has provided no tangible evidence that Class IV general unsecured creditors will actually receive that dividend. Based on the totality of the circumstances, the Plan does not appear feasible.[2] In the event the Plan is confirmed, A Mining and A Truck Line reserve the right to object to any Amended Plan that modifies distribution to Class IV general unsecured creditors and which fails to satisfy the absolute priority rule.

WHEREFORE, creditors A Mining Group, LLC and A Truck Line, LLC move this Court to sustain their objection to confirmation of the Second Amended Plan of Reorganization, and for any further relief this Court deems proper.

---

[2]It is important to note that A Mining and A Truck Line have rejected the Plan. Debtor acknowledges in its Disclosure Statement that Class IV general unsecured creditors are "impaired" as defined by section 1124 of the Bankruptcy Code. In order for a plan to be accepted by an impaired class, the plan must be accepted by creditors of that class that (1) hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that have accepted or rejected such plan, or (2) hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests that have accepted or rejected such plan. 11 U.S.C. §1126 (c) – (d). The allowed claims of Class IV total $1,163,769.20 and, of that amount, A Mining and A Truck Line's claims comprise $701,341.84 – nearly 2/3 of the Class IV claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Electronic Filing to Mr. Thomas B. Woodward, P.O. Box 10058, Tallahassee, Florida 32302, Mr. Jason H. Egan, 110 East Park Avenue, Suite 128, Tallahassee, Florida 32301, and all parties on the LRBP 1007-2 Parties in Interest Matrix, this 3rd day of March, 2010.

/s/ James S. Myers
Christopher T. McRae
Florida Bar No. 865982
cmcrae@mcraemetcalf.com
James S. Myers
Florida Bar No. 64246
jmyers@mcraemetcalf.com
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308
Telephone (850) 386-8000
Facsimile (850) 386-8342

Attorneys for A Mining Group, LLC and A Truck Line, LLC